76470. DAVIS v. UNION CAMP CORPORATION.
(371 SE2d 898)

BANKE, Presiding Judge.

The claimant in this workers' compensation case suffered a disabling head injury on March 7, 1985, while at work for the employer. From that date until June 27, 1985, he continued to receive his full wages pursuant to a "Salary Continuation Plan" offered by the employer. After June 27, 1985, the benefits available to the claimant under the "Salary Continuation Plan" were exhausted, and the employer began paying him workers' compensation benefits for temporary total disability. He requested a hearing on the following issues: (1) Whether he was entitled to receive workers' compensation disability benefits in addition to his salary for the period between March 7 and June 27, 1985, and (2) whether the employer should have been required to implement certain treatment recommendations made by his rehabilitation specialist. The administrative law judge ruled against him on both these issues and also granted a request by the

employer for a change of physicians. These rulings were upheld on appeal to the full board and to superior court, whereupon we granted the claimant's application for a discretionary appeal to this court. *Held*:

1. Strangely enough, the claimant's position that he was entitled to receive disability benefits during the period after the accident when he was being paid his full salary pursuant to the "Salary Continuation Plan" appears to be well taken. Board Rule 220 (b), as it existed at the time in question, specified as follows: "An injured employee who receives regular wages during disability shall not be entitled to weekly benefits for the same period. The Form No. WC2 *must* state: 'Employee elects to receive salary in lieu of weekly benefits.'" (Emphasis supplied.) (The rule was revised effective July 1, 1987, to specify that "[t]he Form WC1 or WC2" must contain the required statement). In *St. Paul Fire &c. Ins. Co. v. Norman*, 173 Ga. App. 198, 202 (2) (325 SE2d 810) (1984), this court held that, absent compliance with the board's duly authorized rules, an employer was not entitled to a credit for salary paid to an employee in lieu of workers' compensation disability benefits. See also *State of Ga. v. Graul*, 181 Ga. App. 573 (3) (353 SE2d 70) (1987), wherein this court upheld the board's imposition of a civil penalty against an employer pursuant to OCGA § 34-9-18 (a), based on the employer's failure to submit a Form WC2 reflecting that the claimant had made an election to receive annual and sick leave benefits in lieu of compensation.

The employer in this case never filed a Form WC2. Soon after the accident, the employer did file a Form WC1, "Employer's First Report of Injury," on which the words, "Salary Continued" were typed. However, no disclosure was made on this or any other writing submitted to the board suggesting that the claimant had made an election to receive his regular salary in lieu of workers' compensation benefits; and the claimant testified without dispute at the hearing on his claim that he had never in fact been asked to make such an election. On the basis of the foregoing authorities, we are consequently constrained to hold that the employer was not relieved of its obligation to pay disability benefits during the period it continued to pay the claimant his regular salary pursuant to the "Salary Continuation Plan."

We must reject the employer's contention that because it filed a Form WC1, it was relieved, pursuant to board Rule 61 (b) (2), of any obligation to file a Form WC2 and thus of any obligation to specify that the claimant had made an election to receive salary in lieu of disability benefits. Rule 61 (b) (2) specifies in pertinent part, as follows: "Form WC2. Notice of Payment or Suspension of Benefits. Use Form WC1 to commence or suspend payment of weekly benefits when simultaneously filing an Employer's First Report of Injury. For all

other cases, including any change in weekly benefits, classification or rating of disability, file Form WC2. . . ." We find nothing in this language which could properly be construed as permitting the employer to avoid the disclosure requirement of Rule 220 (b) by the simple expedient of filing a Form WC1 rather than a Form WC2. Certainly, the filing of a Form WC1 would not have such an effect under the current version of Rule 220 (b), which permits the disclosure to be made on either the Form WC1 or the Form WC2, and we do not believe that it was intended to have such an effect under the former version of Rule 220 (b), either. Rather, we interpret the former version of Rule 220 (b) as having required the submission of a Form WC2 containing the required disclosure in all instances where credit was sought for salary paid in lieu of disability benefits. Accordingly, we hold that the employer in this case was not entitled to claim such a credit and that the board's ruling to the contrary should have been reversed by the superior court.

2. The administrative law judge's decision not to authorize implementation of the recommendations of the claimant's rehabilitation specialist was based on the stated assumption that the specialist had recommended a residential treatment program for the appellant lasting from six to nine months. However, it appears without dispute from the record and from the transcript of the hearing that what the rehabilitation specialist in fact recommended was merely a 7-day period of hospitalization for detoxification and evaluation, to be followed by further professional recommendations. It appearing that the rejection of the rehabilitation specialist's recommendations was based upon a mischaracterization of the nature of those recommendations, we hold that the superior court also erred in affirming this portion of the board's award, and we direct that the case be remanded to the board for reconsideration of this issue.

3. No abuse of discretion has been established with respect to the board's decision to grant the employer's motion for a change of physicians. Accordingly, that portion of the board's award was properly affirmed by the superior court.

*Judgment affirmed in part and reversed in part and case remanded with direction in part. Birdsong, C. J., McMurray, P. J., Pope and Benham, JJ., concur. Deen, P. J., Carley, Sognier, and Beasley, JJ., concur in part and dissent in part.*

DEEN, Presiding Judge, concurring in part, concurring specially in part, and dissenting in part.

While associating and concurring fully with Judge Sognier's dissent concerning Division 1 of the majority opinion, and concurring fully with Division 3 of the majority opinion, I concur specially with Division 2 of the majority opinion which remands the case to the

board for reconsideration of which detoxification, rehabilitation, and evaluation plan was appropriate; I believe that this issue must be reconsidered in light of prohibitions, pronouncements, and principles enunciated in *Dan River, Inc. v. Shinall*, 186 Ga. App. 572 (367 SE2d 846) (1988).

BEASLEY, Judge, concurring in part and dissenting in part.

1. I fully concur in Division 1 because the choice is the employee's and not the employer's, and the employer must report this election. I also concur in Division 3.

2. I respectfully dissent with respect to Division 2 because I perceive no need to remand the case to the board for reconsideration of an issue which was litigated and decided.

The letter from claimant's attorney to the ALJ amending the request for a hearing asked that the hearing also determine whether the employer would be required to implement the treatment plan recommended by clinical psychologist Dr. O'Hara and the rehabilitation specialist, or instead could implement the plan for local hospitalization for detoxification purposes recommended by Dr. Tilliger and approved by the employer. As had been explained by the rehabilitation specialist in a letter to the employer's workers' compensation agent, Dr. O'Hara's plan involved an initial program of detoxification and also pain management in Atlanta, during which other doctors could be brought in to complete a neurological evaluation. Following this, Dr. O'Hara could see the employee in Atlanta to reassess her recommendation for a 24-hour residential program for brain-injured adults.

At the hearing, it was brought out that this residential program would last for six to nine months and that the initial multi-purpose Atlanta program was desired because the employee did not have confidence in local doctors. The employer urged the plan recommended by Dr. Tilliger and Dr. Nash, the regional medical director of the employer, that the employee first undergo local detoxification and thereafter neuropsychological evaluation and then an assessment of rehabilitation needs. The evaluation would be done when the employee was drug-free, because the evaluation would be skewed if done during detoxification in accordance with the Atlanta-based plan.

All of this was aired in detail before the ALJ, who issued an award stating findings of fact and briefly outlining the competing plans. He then concluded: "The plan recommended by Dr. Nash is found to be the appropriate plan of action to take at this time. The request of claimant to obtain Board approval of the recommended course of action as outlined by Dr. O'Hara is denied at this time."

From the record in this case, it does not appear that upon remand, any more needs to be done.

SOGNIER, Judge, dissenting.

I respectfully dissent to Division 1 of the majority's opinion. I do not believe, as the majority apparently does, that we are constrained by *St. Paul Fire &c. Ins. Co. v. Norman*, 173 Ga. App. 198, 202 (2) (325 SE2d 810) (1984) and *State of Ga. v. Graul*, 181 Ga. App. 573 (3) (353 SE2d 70) (1987), to hold that the employer must also pay disability benefits during the period it continued to pay the claimant his regular salary pursuant to the "Salary Continuation Plan." Both *Norman* and *Graul* are easily distinguishable. The issue on appeal in *Graul* was not credit for a salary continuation but a penalty imposed on the employer. In fact, *Graul supports* the idea that a credit ought to be given, since in *Graul* we affirmed an award *granting* the employer credit for a salary continuation. Id. at 574. In *Norman*, our rejection of a credit for the salary continuation was based on the employer's complete failure to follow former Rules 12 and 25. In that case, the employer filed nothing — not even a First Report of Injury — to indicate to the Board that the employee had been injured. Neither case involved the doctrine of substantial compliance, which I believe to be the main issue here.

In the case at bar we do not have an employer who totally failed to act, as in *Norman*, nor do we have the issue of whether a penalty should be imposed on the employer, as in *Graul*. Rather, the ALJ found that the employer had substantially complied with the Board's rules, and this finding was affirmed by the Board. In so finding, the ALJ also implicitly found that the claimant's acceptance and retention of the $328 weekly wage continuation, when he could have insisted upon the alternative $135 weekly workers' compensation benefit, in fact amounted to an election by the employee to accept the salary. In my view, that finding was correct and this court should affirm the ruling below. First, it was supported by evidence in the record showing that forms had been filed, and that the Board had been informed that the claimant was injured, and was receiving salary in lieu of workers' compensation benefits. " '[T]he courts on appeal are bound by findings if supported by any evidence.' " *Handcrafted Furniture v. Black*, 182 Ga. App. 115, 117 (2) (354 SE2d 696) (1987).

Second, there is ample support in the law for such an affirmance. OCGA § 1-3-1 (c) provides that "[a] substantial compliance with any statutory requirement . . . shall be deemed and held sufficient, and no proceeding shall be declared void for want of such compliance, unless expressly so provided by law." No express provision in the law provides that substantial compliance in this case shall be insufficient. Rather, in this case, where by continuing to receive his salary the claimant received an amount almost three times greater than the possible workers' .compensation benefit to which he might otherwise have been entitled, the majority's slavish adherence to technical language

in the rule simply creates a windfall for the claimant. It has long been established that " 'one ought not in equity and good conscience retain money where he would be enriched unjustly at the expense of another.' [Cit.]" *Intl. Indem. Co. v. Bakco Acceptance*, 172 Ga. App. 28, 32 (322 SE2d 78) (1984). Yet such unjust enrichment is precisely the result of the majority's decision here.

Moreover, the majority's position flies in the face of the express provision in Rule 220 (b) that "[a]n injured employee who receives regular wages during disability *shall not be entitled* to weekly benefits for the same period." (Emphasis supplied.) " 'Where there is an apparent conflict between different sections of the same statute, the duty of a court is to reconcile them, if possible, so as to make them consistent and harmonious with one another. [Cit.]' " *Oxford v. Macon Telegraph &c. Co.*, 104 Ga. App. 788, 791 (123 SE2d 277) (1961). The fact that this provision is a rule enacted by an agency pursuant to a grant of legislative authority does not change our duty, as such rules have the force of law. See *American Med. Intl. v. Charter Lake Hosp.*, 186 Ga. App. 204, 207 (366 SE2d 795) (1988). The majority opinion, while mentioning the language of Rule 220 (b) prohibiting injured employees from receiving workers' compensation benefits while receiving regular wages for the same period, simply ignores that language in reaching its conclusion. I do not believe this result is equitable or proper, nor do I think it is necessary here.

Since I concur in Judge Beasley's dissent as to Division 2 of the majority, and with the majority as to Division 3, I would affirm.

I am authorized to state that Judge Carley joins in this dissent and Presiding Judge Deen joins the dissent to Division 1 of the majority.

DECIDED JULY 8, 1988 —
REHEARING DENIED JULY 26, 1988

*Phillip M. Eddings*, for appellant.
*B. H. Levy, Jr., James L. Elliott*, for appellee.